JUDGE ENGELMAYER

14 CV 5019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— X

Alan D. Sugarman,

Civ. No. _____

*Plaintiff,*

COMPLAINT

-against-

Jury Trial Demanded

Morgan Stanley & Co., AON Corporation, John
Doe Corporation One d/b/a Aon Hewitt,
UnitedHealth Group Incorporated, and John Doe
Corporation Two d/b/a UnitedHealthCare,



RECEIVED
JUL 03 2014
U.S.D.C. S.D. N.Y.
CASHIERS

*Defendants.*

———————————————————— X

Plaintiff, Alan D. Sugarman ("Plaintiff") alleges for his complaint, with

knowledge as to his own actions and events occurring in his presence, and upon

information and belief as to all other matters, as follows:

1.  Plaintiff is a resident of New York City, having an address at 17 West 70th

Street, New York, NY 10023, within the district of the United States District Court for

the Southern District of New York.

2.  Defendant Morgan Stanley & Co. is a corporate entity with a place of business

within the Southern District of New York, with an address at 1585 Broadway, New York,

NY 10036.

3.  Defendant Aon Corporation is a corporate entity with a principal place of

business at 200 E. Randolph Street Chicago, Illinois 60601 and a place of business in this

district at 199 Water Street, 12th Floor, New York, NY 10038.  "Aon Hewitt" is a

registered trademark and service mark for the defendant Aon Corporation.  Defendant

Aon Corporation currently handles health care interactions on behalf of corporate clients

for over 21 million employees and as many as 2,600 corporate clients.

4.  Defendant John Doe Corporation One dba "Aon Hewitt" and/or Defendant

Aon Corporation were engaged by defendant Morgan Stanley to operate the "Morgan

Stanley Benefit Center."  Defendant John Doe Corporation One uses the name "Aon

Hewitt" with the permission of and as agent for Defendant Aon Corporation.  Defendant

John Doe Corporation One has an address at 199 Water Street, 12th Floor, New York,

NY 10038.   Defendant John Doe Corporation One and Defendant Aon Corporation are

referred to herein jointly and severally as Aon Hewitt.

5.  Defendant United Health Group Incorporated is a health insurance company

and administrator of employer-self-insured health insurance plans, with a principal place

of business at 9900 Bren Road East, MN008-T202 Minnetonka, Minnesota 55343 and a

place of business in this district at Pennsylvania Plaza, New York, NY 10119.

"UnitedHealthCare" is a registered trademark and service mark for defendant United

Health Group Incorporated.

6.  Defendant John Doe Corporation Two d/b/a United Health Care and/or

Defendant United Health Group Incorporated were engaged by Morgan Stanley to act as

its health plan and claims administrator.  Defendant John Doe Corporation Two uses the

name "UnitedHealthCare" with the permission of and as agent for Defendant United

Health Group Incorporated.  Defendant John Doe Corporation Two has a place of

business at 1 Pennsylvania Plaza, New York, NY 10119.  Defendant John Doe

Complaint of Plaintiff Alan D. Plaintiff

Corporation Two d/b/a United Health Care and Defendant United Health Group Incorporated are referred to herein jointly and severally as "UnitedHealthCare."

7.   Plaintiff is the spouse of a former employee of Morgan Stanley, hereinafter "M.R."

8.   The relevant period herein is from April 25, 2011, when M.R. commenced employment with Morgan Stanley until April 1, 2013, when Plaintiff obtained Medicare Part B and terminated the Cobra continuation policy with Morgan Stanley.

9.   At all time relevant herein, M.R. was under the age of 65 and was not eligible to apply for Medicare.

10.   At all times relevant to this claim, Plaintiff was over the age of 65, and eligible to apply for Medicare Parts A and B, but not entitled to Medicare Part B, because he had not applied for Medicare Part B.

11.   During the relevant period, Plaintiff had not enrolled in Medicare Part B.

<u>Nature of Claim</u>

12.   This action concerns the refusal of Morgan Stanley to pay as a primary insurer for medical care claims made by Plaintiff under a Cobra continuation policy with Morgan Stanley.  Plaintiff obtained the policy when M.R.'s employment with Morgan Stanley was terminated in August 2012.  At that time, Plaintiff did not have coverage under Medicare Part B.

13.   Plaintiff's spouse M.R. telephoned the Morgan Stanley Benefit Center, administered by Aon Hewitt, on September 17, 2012, and advised Morgan Stanley that

Plaintiff did not have Medicare and did not want any of his coverage to change under Cobra.  See ¶ 65 a page 18 below.

14.  Morgan Stanley contends that as to Plaintiff, under the Cobra plan, it was obligated to provide only secondary coverage.  Thus, Morgan Stanley would not cover any claims that would have been covered under Medicare Part B.

15.  Despite the fact that Morgan Stanley had certain knowledge that Plaintiff had not enrolled in Medicare Part B, Morgan Stanley had covered all medical claims as a primary insurer both under its employee health care plan during M.R.'s employment, and under the Cobra continuation plan until January 2013.  In January 2013 Morgan Stanley abruptly changed its position and claimed that it was only a secondary insurer because Plaintiff was eligible for, but had not enrolled in Medicare Part B.

16.  Morgan Stanley accepted Cobra continuation payments from Plaintiff for medical care from September 2012, knowing that Plaintiff was not enrolled in Medicare Part B.  By law, the Cobra premiums were limited to 102% of the premiums charged to Plaintiff and M.R. for the coverage while M.R. was employed, which coverage was primary, not secondary.  Yet, Morgan Stanley did not intend to provide primary coverage to Plaintiff.

## Jurisdiction and Applicable Law

17.  Plaintiff's claims arise under and pursuant to the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1132(a)(1) and (a)(3) and the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. 1161 et seq.

18.  This Court has jurisdiction over this action pursuant to 28 USCS § 1331 and to § 502 of ERISA, 29 U.S.C. § 1132.

19.  Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(1-2) because the Plaintiff resides in this district, and the defendants Morgan Stanley, Aon Hewitt, and UnitedHealthCare may be found here.

Overview of Claim

20.  M.R. was a full-time salaried employee of Morgan Stanley from April 25, 2011 until August 11, 2012.  During her employment with Morgan Stanley, Morgan Stanley provided health insurance coverage to M.R. and Plaintiff under the Morgan Stanley Group Health Plan pursuant to a 171-page, 122,000-word, Health and Welfare Summary Plan Description (the "Summary Plan")  Although described as a "Summary", the Summary Plan is the only plan document.

21.  Two portions of the Summary Plan are particularly relevant here.  First, is a sub-section titled "Medicare" which is part of a larger Section titled "Coordination of Benefits" at page 11.  Exhibit A.  The second larger Section is titled "Continuation Coverage Rights Under COBRA" at pages 151-154.  Exhibit B.

22.  Because Morgan Stanley is self-insured as to the Group Health Plan, it contracted with UnitedHealthCare to act as the claims manager and agent for Morgan Stanley.

23.  Because the Morgan Stanley Group Health Plan covered Plaintiff for medical care as a primary insurer, during the period of M.R.'s employment with Morgan Stanley, Plaintiff did not enroll in Medicare Part B, even though Plaintiff was eligible to do so.

During this period, Morgan Stanley provided, as a primary insurer, medical benefits to Plaintiff under the Morgan Stanley Group Health Plan and paid all claims submitted by Plaintiff.

24.  Morgan Stanley provided full coverage to Plaintiff even though in one of its confusing Summary Plan statements at page 11, it is stated: "Benefits under the Morgan Stanley Medical Plan will be calculated as though your spouse/domestic partner and eligible dependents are receiving Medicare Part B benefits, even if they have not enrolled in this coverage."  This sentence is merely one example of the confusing draftsmanship errors in the Summary Plan, to wit, addressing multiple issues and categories in single paragraphs.

25.  Upon the termination of M.R.'s employment with Morgan Stanley, both M.R. and Plaintiff enrolled in Morgan Stanley Cobra Coverage, effective September 1, 2012, paying over $500 each per month for coverage.  Under Cobra, Plaintiff and M.R. were allowed a grace period  to actually exercise their Cobra rights.

26.  As described below, Plaintiff's spouse M.R. engaged in a specific conversation with Morgan Stanley's Benefit Center discussing Plaintiff's eligibility to apply for Medicare in connection with the Cobra Coverage for Plaintiff.   See ¶ 65 a page 18 below. Morgan Stanley directly, and through UnitedHealthCare and Aon Hewitt, was aware that Plaintiff had not applied for Medicare Part B coverage.

27.  On November 6, 2012,  Plaintiff filed a claim under the Cobra Continuation Coverage with Morgan Stanley for medical coverage, Morgan Stanley paid the claim on November 16, 2012  as a *primary* insurer.  Morgan Stanley is thereby estopped from changing its position subsequently to claim that it would only provide secondary

coverage under the Cobra policy.  Plaintiff relied upon this action and the other statements and communications from Defendants and properly assumed that he had primary coverage under the Cobra plan.

28.  In January 16, 2013, Morgan Stanley's contractor and agent UnitedHealthCare made an entry in its records reflecting that Plaintiff was not enrolled in Medicare Part B.  Plaintiff does not know what these records at UnitedHealthCare reflected prior to January 16, 2013 and is not aware of what triggered UnitedHealthCare to make this change.  Plaintiff did not find this entry in the UnitedHealthCare web site until months later.

29.  Even though it is undisputed that on January 16, 2013, now aware of the Medicare status of Plaintiff, neither Morgan Stanley, Aon Hewitt nor UnitedHealthCare advised Plaintiff that Morgan Stanley intended to deny coverage as a primary insurer as to Plaintiff, effectively eliminating medical coverage for Plaintiff.

30.  Morgan Stanley's apparent position is that for Plaintiff to have continuation coverage effective September 1, 2012, Plaintiff should immediately have obtained Medicare Part B coverage upon the termination of the employment of M.R.  Morgan Stanley was aware that almost all spouses of employees in the position of Plaintiff enrolled in the Morgan Stanley Group Health Plan would not enroll in Medicare Part B because of the decreased coverage.  Many medical providers, limited by Medicare payment rates, would not provide treatment for Medicare patients.  However, it is not possible to sign up immediately for Medicare coverage, and necessarily there would be a gap in coverage. Moreover Plaintiff would have had to pay an additional amount of as much as $200 a month for Medicare Part B coverage, which would provide the primary

insurance which Morgan Stanley was going to cease providing.  This combined payment would exceed the 102% statutory limit on Cobra payments.

31. In late January, 2013, Plaintiff suffered a medical incident and incurred several thousand dollars of medical *costs* (as distinguished from hospital expense coverable under Medicare Part A.)  When Plaintiff obtained these medical services, Morgan Stanley's agents advised the providers that Plaintiff *had* primary insurance coverage from Morgan Stanley.  Plaintiff could have sought in-patient hospital coverage, which would have been covered by Medicare Part A.  Subsequently, when these providers filed insurance claims, Morgan Stanley took a new and different position; Morgan Stanley refused to provide primary coverage, and paid only those amounts which Medicare Part B would not have covered, leaving Plaintiff with substantial medical bills, which the providers rebilled to Plaintiff at higher non-contractual rates.  Defendants also took the position that the maximum payments under the Plan were not in effect, and did not apply to any payments that Medicare B would have paid.

32. When Plaintiff contacted the Benefits Center a/k/a Aon Hewitt, Aon Hewitt was aware of this Medicare Part B status.

33. Once Plaintiff became aware Morgan Stanley was refusing to cover claims as a primary insurer, Plaintiff then immediately applied for and enrolled in Medicare Part B, and terminated his medical coverage under the Morgan Stanley Group Health Plan and Cobra Continuation Coverage.

34.  Plaintiff then exercised his right to appeal the determination of the denial of benefits by Morgan Stanley.  Defendants obstructed Plaintiff's ability to file a claim by asserting that only M.R. could file the claim or otherwise speak to Aon Hewitt.  On May

13, 2013, Plaintiff timely filed an initial Claim for Benefits with Morgan Stanley.  In order to harass and delay, Morgan Stanley extended the determination date for the initial 90-day determination period to 180 days.  On October 16, 2013, Morgan Stanley denied the initial claim.  During the initial claim period, the "appeal committee," the participants of which Morgan Stanley has refused to identify, received ex parte communications not provided to Plaintiff, including communications from Morgan Stanley's in-house counsel.

35.  Plaintiff immediately, on October 18, 2013, filed a Second Level Appeal.  In that Appeal, Plaintiff requested information and documents from Morgan Stanley.  On January 3, 2014, Plaintiff reminded Morgan Stanley that the documents had not been provided.  Once again, in order to harass and delay, Morgan Stanley extended the appeal period from 90 days to 180 days.  On February 11, 2014, Morgan Stanley provided by overnight delivery service an incomplete response to Plaintiff's document request. Plaintiff received the documents on February 12, 2014, the very same day that Morgan Stanley denied Plaintiff's Second Level Appeal.

36.  Both the first level and second level appeals were complete shams.  The appeal committee membership and capacity of the members were not provided to Plaintiff.  Morgan Stanley's legal and compliance and other departments engaged in routine ex parte communications with these committees.  Morgan Stanley did not supply critical documents to Plaintiff until after the determination by the Second Level Appeal Committee.  As described below, the appeal decisions intentionally obscured issues, failed to address issues raised, conflated irrelevant issues, and was otherwise arbitrary and capricious.

37. In response to a proper request by Plaintiff pursuant to 29 C.F.R. § 2560.503-1, Morgan Stanley refused to provide any communication between Morgan Stanley and the New York State Insurance Department and the Department of Labor and other government agencies relating to the claim.

38. The decisions of the appeal panels interpreted the Summary Plan in a manner inconsistent with the plain words of the Summary Plan and in a way not required by the Summary Plan.

39.  Even though Morgan Stanley's expert human resources counsel were aware that courts have expressly approved allowing the use of estoppel in ERISA cases such as this, the appeal decisions completely ignored the factual assertions of Plaintiff which would estop Morgan Stanley from denying coverage.

40.  The appeal panels also disregarded and did not address the claim of Plaintiff that the Summary Plan was not written in a manner calculated to be understood by the average plan participant and not sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Summary Plan.

41.  The appeal panels refused to provide the contractual and other arrangements amongst Morgan Stanley, UnitedHealthCare, and Aon Hewitt as to Cobra and Medicare, the collection and maintenance of information as to the Medicare status of Plan Participants, and communications amongst these entities as to Plaintiff's claims. Incredibly, the appeal panels arbitrarily concluded that the knowledge by UnitedHealthCare that Medicare Part B did not cover Plaintiff  did not constitute knowledge attributable to  Morgan Stanley.  The appeal panels stated: "The Benefit

Complaint of Plaintiff Alan D. Plaintiff

Center does not maintain information regarding whether or not individuals have actually enrolled in Medicare coverage," ignoring the fact that its claims administrator was fully aware that Plaintiff did not have Medicare Part B. This is also clearly untrue, for, the transcript of the telephone call of September 17, 2012, shows Plaintiff's spouse M.R. telling the Benefit Center that Plaintiff was not enrolled, as revealed in a transcript which the appeal panel withheld from Plaintiff until after its decision was rendered.    See ¶ 65 a page 18 below.

<u>Misinterpretation of the Statutory Language</u>

42.  In denying coverage to Plaintiff, Morgan Stanley relied upon page 11 of the Summary Plan titled *"Medicare"* (Exhibit A) and pages 151-154 of the Summary Plan entitled *"Continuation Coverage Rights under Cobra"* (Exhibit B.)

43.  As one example, Morgan Stanley interpreted a provision of "Continuation Coverage Rights under Cobra" to apply to Plaintiff as the spouse of a former employee, when the provision by its terms applied only to spouses of current employees.

44.  As another example, Morgan Stanley documents and applicable law provide different requirements applicable to employees and spouses of employees as to eligibility and coverage under Cobra.  Yet, the appeal decisions ignore that distinction.

45.  Similarly, the Morgan Stanley Summary Plan uses the word "you" to identify the employee only, but the appeal panels applied that term to spouses of the employee. For example, the second appeal decision relies largely upon a provision that uses "you" without showing that the provision also applies to spouses of employees (you) no longer employed by Morgan Stanley:

In particular, the Plan states "to receive maximum medical coverage, it is important to enroll in Medicare Part B (medical insurance) because your benefits under the Medical Plan will be computed as though you have received Medicare Part B benefits, even if you have not enrolled in this coverage."

46.  Morgan Stanley confused and conflated the concepts of being eligible to apply for Medicare and being entitled to (or covered by) Medicare.  Morgan Stanley erroneously considered that being entitled to Medicare was the same as being eligible to apply for Medicare.

47.  Morgan Stanley refused to address the confusion created by Cobra language being included in a section labeled Medicare on page 11, rather than the extensive section labeled *"Important Information About Your Cobra Coverage."*

48.  As another example, Morgan Stanley misinterpreted the law and its documents to interpret the words *"subsequently becomes entitled to Medicare"* to mean *"previously entitled to Medicare"* and the word *"becoming eligible"* to *"was eligible"*; ignoring the grandfathering built into the law and the Morgan Stanley documents.

<u>Diversions in Appeal Decisions</u>

49.  The appeal decisions are exercises in diversion, as demonstrated by the repeated references to the Medicare financial penalty from the government for late enrollment in Medicare once a person is no longer covered by an employee medical care Summary Plan.   To avoid the financial penalty, one must enroll in Medicare Part B within 8 months of being covered by a Cobra, however, one can choose to take the Cobra Continuation Coverage and not enroll in Medicare.  Morgan Stanley in the Summary Plan documents repeatedly and gratuitously warns as to the possible penalty *from Medicare*, but is completely silent as to Morgan Stanley's intention to take full Cobra premiums, but

not provide primary coverage.  Every reference in the appeal decisions to the Medicare

late enrollment penalty is wholly unrelated to this dispute, but is peppered through the

appeal decisions to confuse the issues and to cloak the decisions in respectability.

50.  For example, the second appeal decision relies upon this language in the

sections captioned "Medicare":

> If you are eligible for Medicare and no longer actively working for Morgan
> Stanley but are covered under the Morgan Stanley Medical Plan (for example, as
> a retiree, a COBRA participant or Medicare-disabled employee), Medicare is
> considered primary and pays first. You must enroll in Medicare Parts A and B
> when you first become eligible or you may incur a penalty. Once Medicare has
> determined how much it will pay, you may submit any uncovered expenses to the
> Morgan Stanley Medical Plan.  (emphasis supplied)

The underscored second sentence has nothing at all to do with the first and third

sentences, and the first and third sentences properly belong in the extensive section

concerning Cobra.  *Significantly, this paragraph only applies to former employees, and

does not apply to spouses.*

51.  The appeal decisions at times fail to distinguish between employee-coverage

and Cobra Continuation Coverage, in an artful way also intended  to confuse the review

of the decision.  For example, the second level appeal decision states:  "It is the

Company's position that your claim must be denied because Plan rules clearly state that

once an individual becomes eligible for primary Medicare coverage, the Plan's coverage

automatically is calculated secondary, in accordance with longstanding laws that govern

Medicare coverage."    For active employees and their spouses, Morgan Stanley, to the

contrary, provided primary medical coverage under its plan for employees and their

spouses who were over 65 and eligible to apply for Medicare Part B.   If Morgan Stanley

intended to say that this statement concerned Cobra coverage, incredibly, Morgan Stanley

cannot identify the provision, which "quite clearly states" this "rule" as to spouses of former employees.

52.  No deference whatsoever should be accorded to the determination of the sham appeal panels conducted by Morgan Stanley, based upon these numerous arbitrary errors, failure to accord the plain language of the Summary Plan and the statues, failure to conduct a proper procedure including not providing documents to Plaintiff, accepting ex parte communications, the automatic extension of appeal periods, and the conflict of interest among panel members who exhibited no independence whatsoever.

Morgan Stanley's Agents

53.  Morgan Stanley, as a self-insured employer, used UnitedHealthCare as a contractor and agent to administer and provide health insurance to M.R. and Plaintiff.

54.  As part of the appeal process, Plaintiff requested communications between and amongst Morgan Stanley, UnitedHealthCare, and Aon Hewitt as to Plaintiff's claim specifically and as to contractual and other arrangement and agreements as  coverage to Medicare eligible persons under Cobra.  Morgan Stanley refused to provide such documents.

55.  Upon information and belief, Aon Hewitt advises thousands of corporations as to ERISA and Cobra plans, and has erroneously advised these corporations, and rather than admit to the errors, has rather tortuously advised Morgan Stanley to deny payment to Plaintiff, so as to protect itself from claims from Cobra participants and other companies advised by Aon Hewitt.   Upon information and belief, the other companies advised by Aon Hewitt incorporate similar language recommended or required by Aon Hewitt. Upon information and belief, for Morgan Stanley to admit error in this case would create

problems for Aon Hewitt as to the thousands of other employers it misadvised. This situation has created a conflict of interest for Aon Hewitt.

56. Indeed, the claims decisions appear to have been drafted by Aon Hewitt to conceal their negligence in the administration of the Cobra Coverage and their feigned and deliberate ignorance as to the status of Medicare enrollment amongst the participants in the Cobra Coverage. In all appearances, this situation evidences that the Defendants are blaming each other for the inequitable treatment and breach of their fiduciary duties to Plaintiff.

<u>Plaintiff Contacts Morgan Stanley</u>

57. On August 11, 2012, Morgan Stanley sent by mail an initial Cobra continuation coverage notice to M.R. as a Qualified Beneficiary. August 11, 2012 Cobra Enrollment Notice V000085. The Notice includes a statement that Cobra Continuation Coverage will end automatically if "A person eligible for continued benefits ... *becomes entitled* to Medicare." (emphasis supplied.) This statement was not applicable to Plaintiff in that Plaintiff had previously been eligible to apply for Medicare. As discussed below, this statement is not only illogical, but was not followed by Morgan Stanley for there are different types of care covered by Cobra. Morgan Stanley did not cancel all coverages under Cobra once Plaintiff obtained Medicare Part B. Indeed subsequently Morgan Stanley allowed Plaintiff to continue with Cobra Dental coverage after Plaintiff enrolled in Medicare B in April 2013. This language is just another example of the poor draftsmanship evidence in the Summary Plan.

58. On August 11, 2012, Morgan Stanley sent by mail to Plaintiff a *"Health and Insurance Plans Cobra Enrollment Notice"* (Exhibit C) stating that the cost of the

Complaint of Plaintiff Alan D. Plaintiff

UnitedHealthCare Premier Plan was $529.21 a month.  Page 6 of the Notice shows the correct date of birth of Plaintiff, and that Plaintiff was over 65 and therefore was eligible to apply for Medicare Part B.  Thus, Morgan Stanley was on notice that Plaintiff may have fallen into the category of persons eligible to apply for Medicare Part B, but not having coverage under Medicare Part B.  If Morgan Stanley was not in fact aware of Plaintiff's Medicare B Status, Morgan Stanley breached its fiduciary duties to Plaintiff for not having attempted to ascertain the Medicare coverage of Plaintiff.  The notice does not mention that coverage for Medicare eligible persons will only be secondary – indeed the subject is not even addressed.

59.  Among the reasons why Morgan Stanley and its agents were aware that Plaintiff was not covered by Medicare Part B, is that the very nature of Plaintiff's coverage would have been completely different during the period of M.R.'s employment, for during that period, Medicare Part B would have been primary.  Morgan Stanley and the other defendants had to be aware of the status of Plaintiff's Medicare B coverage, because Morgan Stanley was providing primary coverage to the Plaintiff during the employment period while its own records reflected Plaintiff as being over 65.

60.  On August 11, 2012, in order to comply with Cobra rules and law, Morgan Stanley also provided to Plaintiff a document  *"Important Information About Your Cobra Continuation Coverage and Information for Cobra Enrollees"* (Exhibit C) ) which notice included Plaintiff's date of birth and then  states:

> "COBRA continuation coverage is the <u>same coverage that Morgan Stanley plan gives to other plan participants who are not receiving continuation coverage</u>. Each qualified beneficiary who elects continuation coverage will have the <u>same rights</u> under Morgan Stanley plan as other plan participants, including open enrollment and special enrollment rights."  (emphasis added).

61.  However, to the extent that, as Morgan Stanley now contends, Plaintiff may have been required to enroll in Medicare Part B immediately as of September 1, 2012, in order to obtain full medical benefits, the Plaintiff would have been required to pay an additional monthly Medicare premium of as much as $200, if not more.  The Cobra Continuation Coverage, as now interpreted by Morgan Stanley, does not offer the "same rights".  Significantly, the *"Important Information About Your Cobra Continuation Coverage and Information for Cobra Enrollees"* (Exhibit C) ) makes no reference to the provisions in the Summary Description, apparently because such a provision would conflict with the legally required Cobra notice requirements.

62.  On August 31, 2012, the Group Health Coverage under the Morgan Stanley Group Health Plan as to M.R. and Plaintiff terminated, and thereafter, any medical coverage would be under the Cobra continuation coverage.  But the Cobra Continuation Coverage did not provide the same coverage, according to Morgan Stanley's and Aon Hewitt new positions: (i) that as of August 31, 2012, Plaintiff would have to pay an additional $200 or more a month for Medicare Part B, and (ii) that in order to be able to obtain continuous coverage, Plaintiff would have to complete enrollment in Medicare within a few days after receiving the Cobra notice.  The  Cobra notice was notably silent as to this requirement.  COBRA requires that qualified individuals may be required to pay a premium for coverage up to 102 percent of the cost – but adding the Medicare Part B premium would result in the cost of Cobra continuation coverage exceeding the 102 percent limit.

63.  On September 17 , 2012, Morgan Stanley sent by mail  a "Cobra Confirmation of Enrollment" stating:

> In addition, COBRA coverage will end automatically if any of the following situations occur:  ...  "A person eligible for continued benefits ...  becomes entitled to Medicare"  (emphasis added).

This sentence did not distinguish between Medicare Part A and Medicare Part B.  The obverse interpretation to this sentence is that a person not entitled to Medicare Part B has full Cobra coverage.

64.  On September 17 , 2012, Morgan Stanley sent by mail  a "Cobra Confirmation of Enrollment" stating:

> "If you or a qualified beneficiary subsequently becomes covered under another group health plan or entitled to Medicare, immediately call the Morgan Stanley Benefit Center"  (emphasis added).

This sentence does not distinguish between Medicare Part A and Medicare Part B.  The sentence does not state that is that a person eligible to apply for Medicare Part B will not have full Cobra coverage.  But, the sentence did indicate the importance to call the Morgan Stanley Benefit Center as to Medicare and Cobra.

65.  In accord with the instructions to "immediately call the Morgan Stanley Benefit Center" Plaintiff's spouse M.R. did indeed call the Aon Hewitt managed Benefit Center on September 17, 2014.  The documents provided by Morgan Stanley to Plaintiff on the day that Morgan Stanley denied Plaintiff's second-level appeal include a transcript of that telephone call.  M.R. sought to be assured that Plaintiff would be covered when Cobra was elected.  At no time did the Benefits Center state that not enrolling in Medicare would deny Plaintiff of primary medical insurance coverage.

Complaint of Plaintiff Alan D. Plaintiff

[Benefit Center] Representative: Well is he-is he going gonna gain Medicare while he's in-under your COBRA or?

[M.R]: Well we-we haven't-he hasn't decided yet. So in other words by signing us up I'm just making sure we have coverage, but then like in the next month or two he might decide that he wants to do the Medicare. So if he-if he does do that, is it-can he just simply-how does that go? Does he just-do we just come back onto the website and then just change it again?

[Benefit Center]  Representative: Yes you can because that's considered a qualified life event. Because he'll-well you-it'll just be him going onto the Medicare, right?

[M.R]: Yeah.

[Benefit Center] Representative: Okay yeah, so all you'll do is when you go-what you'll do is you'll just go to change coverage under the-under the health and welfare link, and then it'll-you'll see where it says like participant gains other coverage or participant loses eligibility. And then you can remove him off of you're your COBRA coverage from that point.

Exhibit D, Transcript of Telephone Conversation between M.R. and Benefit Center as Transcribed by Morgan Stanley, and provided to Plaintiff after the second appeal was decided (emphasis added).

66.  Statements in the *Cobra Confirmation of Enrollme*nt of September 17, 2012 were unintelligible to the extent that is conflicted with other statements by Morgan Stanley and Aon Hewitt that provided, in contradiction, that Cobra would become secondary coverage, not that Cobra Continuation Coverage would terminate.  To further confuse, Morgan Stanley seems to be stating that other Cobra Continuation Coverages, such as for dental would terminate as well, even though Medicare Part B does not provide dental coverage.  This clearly establishes the disarray and confusion that can only serve to confuse and mislead covered persons, especially when Morgan Stanley and Aon Hewitt refuse to apply the normal meaning to everyday terms.   Morgan Stanley and Aon Hewitt cannot have the language *post facto* mean anything they wish.

67.  Morgan Stanley utterly failed to provide Plaintiff with important information as to the continuation of coverage.  The continuation of health insurance coverage is an important concern when a person's employment status changes. Thus, providing appropriate notice of COBRA continuation coverage rights is a key requirement under COBRA. Notice is necessary to allow the qualified beneficiary to make an informed decision whether to elect coverage.

68.  On September 17, 2012, when confirming the Cobra Enrollment, Morgan Stanley again correctly stated the birthdate of Plaintiff and *established again that Morgan Stanley was aware that Plaintiff was over 65 and eligible to apply for Medicare prior to September 1, 2012*.  Morgan Stanley's feigned lack of knowledge as to Plaintiff's Medicare status, if true, was deliberate ignorance.

69.  On November 16, 2012, Morgan Stanley through UnitedHealthCare processed a claim for Medical Benefits for services rendered in-network on November 6, 2012, Claim number 91785204901.  The amount billed was $429.00, the plan discount was $219.31, and Morgan Stanley through UnitedHealthCare and UnitedHealthCare paid $188.72.  The Explanation of Benefits Summary (EOB) as issued by Morgan Stanley-UnitedHealthCare made no reference to Medicare as a primary insurer.  This claim was processed by UnitedHealthCare on behalf of Morgan Stanley as if Morgan Stanley was providing primary coverage.  Morgan Stanley thereby either waived any requirement that Plaintiff maintain primary coverage through Medicare Part B, or is estopped from denial, and is estopped as well from claiming that primary coverage did not exist.  EOB for Claim number 91785204901 dated November 16, 2012.

70.  On January 16, 2013, Morgan Stanley through UnitedHealthCare updated the UnitedHealthCare Web Site and the page titled "Coordination of Benefits Summary." This showed that *on that date, Morgan Stanley knew that Plaintiff still was not covered by Medicare Part B.*  Morgan Stanley and UnitedHealthCare took no steps whatsoever to notify that it would soon consider the Morgan Stanley coverage to be only secondary coverage.  See,  UnitedHealthCare Web Page dated January 16, 2013 *"Coordination of Benefits Summary"* downloaded March 6, 2013.

71.  On January 30, 2013, Morgan Stanley through UnitedHealthCare processed three in-network Medical claims by Plaintiff - 1026949001, 978078001, 1071522801. For the first time, Morgan Stanley and UnitedHealthCare took the position that the Medical coverage was only secondary to Medicare Part B and therefore Morgan Stanley paid no part of the claim.

72.  The EOB of January 30, 2013 (and all subsequent EOB's,) for the first time stated:

> "50 - MEDICARE PAYS BENEFITS BEFORE YOUR GROUP HEALTH
> PLAN. SINCE THE PATIENT DID NOT ENROLL FOR MEDICARE PARTS
> A AND/OR B OR USED A FACILITY OF THE FEDERAL GOVERNMENT,
> WE PROCESSED THIS CLAIM AFTER ESTIMATING HOW MUCH
> MEDICARE PARTS A AND/OR B WOULD HAVE PAID. IF THE PATIENT
> IS NOT ENROLLED IN MEDICARE, THE PATIENT IS RESPONSIBLE FOR
> THE DIFFERENCE BETWEEN THE BILLED CHARGE AND THE AMOUNT
> PAID BY THIS PLAN."

This EOB was posted on the UnitedHealthCare web site after January 30,  2013. However, Plaintiff did not receive notice of this decision.

73. The January 30, 2013 EOB was not mailed to Plaintiff, and was available only on-line - though there is no way to know when the EOB was actually posted on January

30, 2013 or at a later time.  Morgan Stanley, UnitedHealthCare, and Aon Hewitt made no

effort to contact Plaintiff directly by mail or telephone and advise Plaintiff that Morgan

Stanley would not be providing Medical coverage.  Plaintiff would only discover this

EOB subsequently when he began to receive dunning statements from medical providers.

74.  Incredibly, Morgan Stanley by its payments history in 2013 took the position

that its coverage would provide no coverage beyond Medicare Part B.  Thus, absent

primary Medicare coverage, Morgan Stanley would pay no part of a claim, since it

appeared to limit its coverage to the Medicare coverage.  Moreover, the Plan maximums

could never be reached.  *Thus, after January 30, 2013, Morgan Stanley made no*

*payments whatsoever under the Plan  - zero, while continuing to hold onto the monthly*

*premiums paid to it.*

75.  Rather than notify Plaintiff that Morgan Stanley had changed its

interpretation of the coverage and would provide no Medical coverage in the absence of

Medicare Part B, a week or so later on February 10, 2013, Morgan Stanley through Aon

Hewitt sent a new Billing Notice by U.S. Mail to M.R. for the monthly premium, and was

mum as to the fact that Morgan Stanley would not honor claims because of the absence of

Medicare Part B.

76.  On February 18, 2013, Plaintiff obtained in-network medical services for

which claim was filed with UnitedHealthCare - 4049442945.   This was the last in-

network medical service obtained by Plaintiff.

77.  Plaintiff began to receive bills from medical providers stating that

UnitedHealthCare was denying payment of the claims.  Plaintiff then contacted

UnitedHealthCare and Aon Hewitt to demand an explanation. Plaintiff received

unsatisfactory responses from UnitedHealthCare and Aon Hewitt.

78.  On February 27, 2013, Plaintiff obtained out-of-network provider services

and filed claim with UnitedHealthCare.  This was the last out-of-network medical service

obtained by Plaintiff.

79.  In response to a request by Plaintiff, on March 8, 2013, UnitedHealthCare

sent a letter affirming that Plaintiff's coverage had been in continuous effect since April

25, 2011, but neglecting to state the obvious - that for medical claims, *the coverage was

of no value since Morgan Stanley had decided to claim that the medical coverage was

only* <u>secondary</u>.  Letter dated March 8, 2013 from UnitedHealthCare to M.R.

80.  In early March, 2013,  Plaintiff began to take steps to enroll in Medicare Part

B.

81.  In the meantime, Plaintiff communicated with Aon Hewitt and the human

resources department of Morgan Stanley and asked for an explanation of the newly

expressed position as to the requirement for Medicare Part B.  Neither would or could

identify specific language, only referring to unidentified pages from the Summary Plan,

but not to specific language in the pages, leaving the Plaintiff to attempt to find the

needle in the haystack.  In the meantime, Aon Hewitt provided misleading information to

Plaintiff, and while recording the telephone calls of Plaintiff, would not allow Plaintiff to

record the calls himself, in violation of ERISA.   Aon Hewitt would not cooperate

quickly in providing health coverage information required by Medicare for timely

enrollment in Part B, which information Aon Hewitt and Morgan Stanley had omitted

from the HIPAA Notice, i.e., the coverage period while M.R. was an employee.   Aon

Hewitt also falsely stated that only M.R., and not Plaintiff could file an appeal from the denial of claims, and dragged its feet in providing an appeal form.  Aon Hewitt also refused to speak to Plaintiff on the telephone unless his spouse was present at the commencement of each telephone call.   Aon Hewitt would not even respond to a question by Plaintiff was to whether Morgan Stanley was self-insured.

82.  Effective April 1, 2013, Plaintiff enrolled in Medicare Part B and enrolled in a Medicare Supplement Plan with AARP-UnitedHealthCare of New York, with coverage superior to the Morgan Stanley-UnitedHealthCare plan, at far lower cost.  Plaintiff then terminated the Morgan Stanley Cobra Medical Care coverage.  When enrolling in the AARP-UnitedHealthCare program, AARP-UnitedHealthCare would not allow Plaintiff to enroll until after he had an effective date for Medicare Part B coverage, unlike Morgan Stanley, which happily took the money, even if there was no primary coverage.

83.  On April 5, 2013, Morgan Stanley through Kendra Klein, Vice President, Morgan Stanley Human Resources, confirmed the denial of Plaintiff's claim and even *refused to return the premiums paid.*  Ms. Klein, to add insult to injury, stated: "We understand that you are unhappy with your choice to enroll in COBRA medical coverage due to your primary coverage, Medicare."   E-mail from Kendra Klein dated April 5, 2013.   Ms. Klein suggested contacting Elana Cooper, Morgan Stanley in-house counsel.  Despite repeated requests, Ms. Cooper was unable to explain why the word  "becomes" does not have the ordinary meaning and otherwise provide a specific reference to the words in the Summary Plan that supported the position of Morgan Stanley.

Summary of Wrongs Committed by Defendants

84. The Summary Plan was drafted by Morgan Stanley, and, upon information and belief, by Aon Hewitt.  Thus the language is to be read against Morgan Stanley and in favor of Plaintiff.

85. Morgan Stanley by its communications and actions and inconsistent and conflicting written statements, both by itself and through UnitedHealthCare and Aon Hewitt, has waived any requirement that the Medical Coverage was secondary only to Medicare Part B.

86. Morgan Stanley has failed to provide a detailed written explanation for the basis of any denial and failed to state the specific reason for the denial, including reference to the specific policy provision(s) used as a basis of denial.

87. Plaintiff has received numerous invoices from medical providers at the non-contractual "rack rate".  In order to protect Plaintiff's credit rating and so as to be able to obtain additional services, Plaintiff is being required to pay and has paid some of the medical providers the rack rate - for example, paying $210 for blood tests that would under the Plan the provider might only pay $20.  Plaintiff has been damaged at the rack rate, and Plaintiff is entitled to full reimbursement of amounts paid by him to providers, even if in excess of what Morgan Stanley would have paid.

88. Morgan Stanley, as a self-insurer, has engaged in unjust enrichment and predatory acts, in that the amounts saved in claims payment accrues directly to the bottom line and executive bonuses of Morgan Stanley. Morgan Stanley directly benefits from its poor documentation and communication as to Cobra benefits, doing only  the minimum, if that, required by law.

89.  Morgan Stanley has failed to act in good faith and to fairly deal with Plaintiff.

90.  Morgan Stanley's behavior shocks the conscience and punitive damages should be afforded against Morgan Stanley. To the extent that such damages are not awardable under ERISA, Morgan Stanley and the other defendants should be subject to enforcement action by the Department of Labor.  Plaintiff requests that the court find that Morgan  Stanley and the other defendants acted in violation of ERISA, as a basis for enforcement actions against Morgan Stanley and the other defendants.

91.  Plaintiff has exhausted his administrative remedies.

92.  The appeals process and determinations were arbitrary and capricious and Plaintiff is entitled to a de novo review.

## Count I

The foregoing averments are incorporated herein by reference.

93. Morgan Stanley failed to make payments for Medical care to medical providers for care provided to Plaintiff from January 1, 2013 through March 31, 2013, as required by the Summary Plan.

94.  Even assuming that Morgan Stanley properly acted as the primary insurer, the computation of the benefits to be paid by Morgan Stanley is arcane and based upon discretionary application of various policies.  Because of the bad faith shown by Morgan Stanley herein, Morgan Stanley should pay all claims submitted to it during this period whether in or out of its network and without regard to minimum deductibles.

95.  Plaintiff has suffered damages of at least $10,000.

**Count II**

The foregoing averments are incorporated herein by reference.

96. Morgan Stanley failed to make payments for Medical care to medical providers for care provided to Plaintiff from January 1, 2013 through March 31, 2013.

97. Even if the Summary Plan does not provide primary coverage to Plaintiff for the relevant period, Morgan Stanley is estopped from applying the Summary Plan based upon the acts and statements of Morgan Stanley and the other Defendants.

98. Even assuming that Morgan Stanley properly acted as the primary insurer, the computation of the benefits to be paid by Morgan Stanley is arcane and based upon discretionary application of various policies. Because of the bad faith shown by Morgan Stanley herein, Morgan Stanley should pay all claims submitted to it during this period whether in or out of its network and without regard to minimum deductibles.

99. Plaintiff has suffered damages of at least $10,000.

**Count III**

The foregoing averments are incorporated herein by reference.

100. Plaintiff's reputation with credit agencies and medical providers has been damaged by the actions of Defendants. Plaintiff requests that the Court order Morgan Stanley and the other Defendants issue a letter of apology to be provided to the credit agencies and medical providers, taking full responsibility for the non-payment of medical bills.

**Count IV**

The foregoing averments are incorporated herein by reference.

101.  Defendants, Morgan Stanley, Aon Hewitt, and UnitedHealthCare are fiduciaries within the meaning of 29 U.S.C. §§ 1002(21) and 1102, in that they exercised discretionary authority or discretionary control, jointly and severally, with respect to management of the Plans, management of disposition of benefits, and / or had discretionary authority and discretionary responsibility in the administration of the Plans.

102.  Defendants, jointly and severally, breached their fiduciary duties as set forth in ERISA § 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Plaintiff, in failing to act in accordance with the Plans, and in arbitrarily and illegally discriminating against Plaintiff on the basis of Plaintiff's age.

103.  Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff is entitled to bring an action to obtain appropriate equitable relief to redress violations of ERISA, including breach of fiduciary duties, or to enforce the provisions of ERISA and the terms of the Plans.

### *Relief Requested*

**WHEREFORE**, Plaintiff respectfully requests that this Court grant judgment in favor of Plaintiff, and against Defendants, jointly and severally, to:

1.    Damages in the amount unpaid medical claims in an amount of $10,000.

2.    Declare that Defendants breached their fiduciary responsibilities under ERISA and knowingly participated in such breach of violations and that said Defendants acted in bad faith and acted unreasonably.

3.    Require Defendants to provide a written statement to medical providers and credit agencies declaring that Defendants were in fault for not providing primary coverage and apologizing to the medical providers and to Plaintiff.

4.    Require Defendants to provide primary coverage under Cobra for all covered person regardless who were not covered by Medicare Part B prior to the date of determination.

5.    All costs of obtaining and/or executing the above relief.

6.    Attorney's fees for consulting attorneys who have assisted Plaintiff, who is acting pro se.

7.    Any and other relief the Court may deem allowable or just.


### JURY TRIAL

A jury trial is demanded.


Dated:        July 3, 2014
              New York, New York


Respectfully submitted

Alan D. Sugarman, Esq.
ADS-1209, NY 1169762
Plaintiff and Acting Pro Se
17 W. 70th St.
New York, NY 10023
212-873-1371
sugarman@sugarlaw.com


Exhibit A    Page 11 from Summary Plan Description 2013, "Medicare"
Exhibit B    Pages 151-154 from Summary Plan Description 2013, "Continuation
             Coverage Rights Under COBRA"

Complaint of Plaintiff Alan D. Plaintiff

Exhibit C      "Health and Insurance Plans Cobra Enrollment Notice" dated August 11,
               2012 from Morgan Stanley to Plaintiff,
Exhibit D      Transcript, September 17, 2013, Benefit Center and M.R.